IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
January 22, 2025 04:56 PM
SX-2020-CR-00139
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) SX-2020-CR-00139 |
| | ) |
| | ) CHARGES: |
| Plaintiff, | ) |
| | ) UNAUTHORIZED POSSESSION OF A |
| v. | ) FIREARM; POSSESSION OF |
| | ) AMMUNITION |
| | ) |
| JOSE JUAN OSORIO, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Cite as: 2025 V.I. Super. 3P**

**MEMORANDUM OPINION AND ORDER**

[1]    **THIS MATTER** came before the Court on January 14, 2025, for a *Franks* Hearing on Defendant, Jose Juan Osorio, Jr.'s (hereinafter "Osorio"), March 31, 2022, Motion to Suppress. Because the Affidavit of Detective Aisha Jules (hereinafter "Jules") contained false or misleading statements and omissions which were material to the Magistrate's probable cause determination, the Motion to Suppress will be granted, and all evidence seized in connection with the search of Osorio's home will be suppressed.

**STATEMENT OF FACTS**

[2]    Detective Aisha Jules (hereinafter "Detective Jules") prepared an Affidavit, dated May 26, 2020, which served as the basis for the Magistrate's issuance of a search warrant for Osorio's home at #220 Sion Hill, Christiansted, St. Croix, U.S. Virgin Islands. The Affidavit was prepared in furtherance of an investigation into an attempted murder incident that occurred at #13A Mt Pleasant, in the area of the Evelyn M. Williams Elementary School, in Frederiksted. St. Croix. Two persons in a Chevy Cobalt were shot

in the neck, and a silver Ford Focus appearing to belong to the suspects was found in the location of the shooting.

[3]     The Affidavit laid out the steps undertaken as part of the investigation to determine who committed the shooting and where the suspects were located, most of which are not relevant to the subject charges. However, the silver Ford Focus was later tied to #242 Mount Pleasant and Jiovani Smith ("Smith"). Smith was later picked up and transported to the Wilbur H. Francis Command for questioning. (See Affidavit, Paragraph J)

[4]     Paragraph K of the Affidavit states, "I then received information that a witness to the incident was present at the Police Station. I traveled to the Wilbur H. Francis Police Station where I made contact with Witness (W1) who provided a statement that was video recorded".   Paragraph L continues, "(W1) stated that Jerome Wallace, Calijah Brewley, and C.M., a minor, was (sic) present at Jiovani Smith's house in Mount Pleasant" where they planned the shooting. Osorio's challenge to the veracity of this Affidavit focused primarily on paragraph "M", which states:

> W1 stated that on Tuesday, May 12, 2020, Jerome and Calijah were present at Jiovani's house when Jiovani stated that he needed a ride to go pink up some "steel" (street name for firearm). W1 stated that the three traveled to a yellow house located on the back road for (sic) Sion farm. W1 stated that the yard has a shed that appears to be a booth or a food van, and a short Hispanic male individual lives there. W1 stated that that Jiovani met with the short Hispanic male and they went inside. W1 states that Jiovani exited with the firearms that were used in the shooting in the vicinity of Evelyn M. Williams School. W1 stated that he/she did not enter the area where the firearms are kept, but he/she was advised by Jiovani that is where they keep their arsenal of firearms.

(Affidavit, Paragraph M)  Paragraph N, for the first time in the Affidavit, mentions #220 Sion Hill and Jose Osorio. It states, "Further investigation revealed that Jose Juan Osorio,

who is known associate of Jivani Smith, fits the description of the short Hispanic male and the house, located at #220 Sion Hill, where he resides. Police reports also verified that Mr. Osorio resides at said address." There is no information on the "further investigation" that led to the conclusion that Osorio or the address, #220 Sion Hill, were connected to the shooting incident.

[5]     The other relevant paragraphs in the Affidavit are paragraphs Q and R. In those paragraphs, detailed information on the description and location of #220 Estate Sion Hill is given. Detective Jules asserts in paragraph Q that #220 Estate Sion Hill, Christiansted, St. Croix, USVI is "on the south side of a short unnamed east/west traveling road located within the Sion Hill neighborhood. The residence is the second residence from the west end of the road and is located on the corner of the cul-de-sac and the main semi-circle access road." Then, in paragraph R, Detective Jules makes known the following:

> The structure is described as being a single-family, single-story residence with a large blue box truck/ food truck parked in the front yard. The structure has light yellow painted exterior walls, light blue/green trim, and a silver metallic corrugated metal roof. The main entrance is located on the north side on the northwest corner of the structure and is painted white. The numerical "220" appears on a small white placard located on the northwest corner of the structure.

There is no information in the Affidavit of the investigation that led to the conclusion that #220 Estate Sion Hill was the location to which W1 referred, where a short Hispanic male known as Osorio lives.

[]     At the *Franks* Hearing, Detective Jules testified that W1 was Jerome Wallace and that the contents of paragraph "M" relied upon the statements of Jerome Wallace (hereinafter "Wallace"). However, in the Video Statement, which was played at the hearing and admitted as evidence, Wallace (W1) does not describe going to "the yellow

house located on the back road for Sion farm" nor does he otherwise describe the house as set forth in paragraph "M". Detective Jules stated that Wallace continued to speak after the video camera was turned off, and she relied upon those unrecorded statements in drafting paragraph "M". Detective Jules does not testify to any further investigation that was conducted to verify the unrecorded statements of Wallace. She also admits that no notes were taken on the unrecorded statements of Wallace, nor does a police report memorialize the statement. There was also no corroborating testimony to Detective Jules' statements of Wallace's unrecorded testimony.

[7]     Detective Jules also testified that Wallace was not entirely forthright in providing information to the police. During his questioning by the police, Wallace lied when he told the police that a gun was placed to his head to force him to drive. He later admitted that it did not occur. Later, Wallace relates how the shooting and securing of the weapons occurred.

[8]     On May 26, 2020, Detective Jules prepared an affidavit for search warrants on two properties, one of which was #220 Sion Hill, Christiansted, St. Croix. A warrant was issued on the same date to search #220 Sion Hill. The search was executed on May 29, 2020. As a result of the search, several weapons and ammunition were found, namely:

- a chrome Springfield Armory ACP magazine with thirteen (13) live .45 caliber rounds
- a black Springfield Armory SC-45 ACP SN: GM473369 with one (1) live .45 caliber round in the chamber and nine (9) in the magazine
- three (3) magazines containing 9 mm live rounds
- one (1) black, Ruger AR-556 SN:856-92656 with one (1) live .223 round in the camber and a hundred capacity double drum magazine which contained eighty-nine (89) live .223 rounds

- a black Glock 19 SN: BFSX984 with a chambered 9 mm live round and an extended 9mm magazine containing thirty-one (31) live rounds inside of same with a Glock switch chip on it
- one (1) black handgun with P80 receiver model: PF940C with a chambered 9 mm live round and a magazine containing fourteen (14) live round inside of same
- one (1) brown magazine containing forty-two (42) live .223 rounds, one (1) Glock extended magazine containing thirty-two (32) live 9 mm rounds
- one (1) black magazine containing twenty-eight (28) live .223 rounds
- a red and black backpack containing one (1) Glock magazine containing fifteen (15) 9mm live rounds, one (1) KCL magazine containing ten (10) 9 mm live rounds, and one (1) Glock speed loader

Defendant moves to suppress the fruits of the search.

**LEGAL STANDARD**

[9]     The Fourth Amendment[1] to the United States Constitution applies to the territory of the United States Virgin Islands through the Revised Organic Act of 1954, § 3. *V.I.C. Rev. Org. Act of 1954 § 3.* It unequivocally guarantees the protection of people and their property from unreasonable searches and seizures. See, *USCS Const. Amend. 4.* To be secure in one's person, house, papers, and effects is a right, not a privilege that can be vanquished with the stroke of a pen, and our courts have gone to great lengths to clarify and define the parameters of that right and the burden on the government to ensure that this right is not trodden upon without probable cause.

[10]     In 1978, the Supreme Court of the United States, in determining that the ability to challenge the "Oath or Affirmation" supporting a probable cause determination is critical

---

[1] The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. *USCS Const. Amend. 4.*

to protecting an individual's Fourth Amendment right, established the procedure by which a defendant may challenge whether a warrant to search for the defendant's property was obtained with deliberately false information. *See Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Supreme Court of the United States made it very clear that a defendant's challenge must be directed at the veracity of the affiant and not the veracity of governmental informants. *People v. George*, No. ST-2016-CR-0000085, 2016 WL 4681165, at *4 (V.I. Super. Sept. 6, 2016) (citation omitted).

[11]    To obtain a *Franks* hearing, the defendant must first make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56.    In this case, the Court found that the Defendant made this preliminary showing, and it granted the *Franks* hearing.

[12]    To sustain his burden at the hearing by a preponderance of the evidence, the defendant must identify the allegedly false statements or omissions in the affidavit and provide the reasons supporting the argument. *Franks*, 438 U.S. @ 171.    To meet this threshold, the defendant must first present more than conclusory statements that the affidavit contains false statements or omissions.    *Id.* Finally, the defendant must show that the statements are material to the probable cause determination. *People v. George*, 2016 WL 4681165, at *2.    This requires the court to extricate the allegedly false statements and omissions and determine if probable cause exists with the statement left in the affidavit.    *Id.* If the Court finds that without the false or misleading statements and omissions in the affidavit, probable cause does not exist, then the fruits of the resulting

search must be suppressed as an unreasonable intrusion upon a person's Fourth Amendment right.

## DISCUSSION

**A. Detective Jules' Affidavit made misleading statements and omitted material information upon which the Magistrate relied when she issued the Search Warrant.**

[13]   In evaluating a challenge to the sufficiency of the Affidavit, courts will first identify the false or misleading statements and/or omissions made by the affiant. The Court will also look at whether the false or misleading statements or omissions were made intentionally, knowingly, or with reckless disregard for the truth. *See People of the V.I. v. George*, No. ST-2016-CR-0000085, 2016 V.I. LEXIS 135, at *5 (Super. Ct. Sep. 6, 2016). Omissions are made with reckless disregard for the truth when an officer, acting as an affiant, omits facts that any reasonable person would know that a judge would consider in granting a warrant application. *Id.* at *10.

**1.   With reckless disregard for the truth, Detective Jules omitted the identity of W1 and made misleading statements suggesting that W1 was not Jerome Wallace.**

[14]   The Affidavit reads like W1, while being videotaped, related what transpired between Wallace, Calijah Brewely, and C.M., a minor, leading up to and immediately following the shooting, including that "… Jiovani gathered the firearms and placed them in the silver Ford Focus and told the others that it was time to go." (Affidavit, paragraph L)  It was only during January 14, 2024, hearing that Detective Jules admitted that W1 was Jerome Wallace.  This admission only came after the Defendant's counsel received from the People a copy of the referenced recorded statement which showed Jerome Wallace as the witness on the eve of the hearing.

[15]    Additionally, the Affidavit's suggestion that Wallace and W1 are two separate people is further bolstered by the continuing reference to W1 as an observer rather than a participant. For example, paragraph "M" reads:

> W1 stated that on Tuesday, May 12, 2020, Jerome and Calijah were present at Jiovani's house when Jiovani stated that he needed a ride to go pick up some "steel"...W1 stated that the three traveled to a yellow house...Jiovani met with the short Hispanic male and they went inside.

[16]    The statement speaks of Wallace in the third person, and reads as though W1, Wallace, Calijah, and Jiovani are all at Jiovani's home and travel together to pick up some "steel". The use of ambiguous pronouns such as "they" further leads to confusion. The fact that paragraph "M" states that there were three people does not dispel the confusion advanced in this paragraph and throughout the larger Affidavit.

[17]    Applying the standard established by *George*, any reasonable person would know that a judge would consider the witness' involvement in the illegal activity they are describing to adequately weigh their credibility. *See People of the V.I. v. George*, No. ST-2016-CR-0000085, 2016 V.I. LEXIS 135, at *10 (Super. Ct. Sep. 6, 2016). Here, the Magistrate Judge read the Affidavit and must have concluded that the officer's statements were based on the statements of a reliable third party without considering that Witness #1 may also be a participant in the crime to which he is testifying. By itself, the misleading statements and omissions may be insufficient to suppress the magistrate's search warrant, but when read in conjunction with other misleading statements and omitted material information, the Magistrate would have had an incorrect understanding of the investigative facts of the case.

## 2. Detective Jules knowingly made a false statement about Wallace's statements being in the video recording.

[18] The Affidavit also reads as though the statements of the W1 (Wallace) were video recorded. However, while on the witness stand, Jules admitted that these statements were not in the video recording. She went on to testify that Wallace made these statements after the recording was turned off, but that she inexplicably chose not to record them. The Court's review of the video-recorded statement also shows the absence of a description of "a yellow house located on the back road of Sion Farm… with a yard that has a shed that appears to be a booth or food van, and a short Hispanic male lives there". More importantly, neither #220 Sion Hill nor Osorio's name were mentioned.

[19] The statements of W1 were not only unrecorded, but Detective Jules testified that no notes were taken, or written reports made. Also, there is no reference in the Affidavit to an in-person statement taken from Wallace at any other time. Wallace's unrecorded statements were purportedly made on May 15, 2020, following the video recording. The Affidavit was not written and signed until May 26, 2020, over ten days later. The opportunity for erroneous recollection without written documents casts doubt on the accuracy of Detective Jules' recollection, and the reckless manner in which the statements were made, knowing that the Magistrate Judge would rely upon them.

## 3. Detective Jule's Affidavit includes only conclusions and not corroborating investigative Facts from which the Magistrate Judge could have concluded that there was probable cause to search Osorio's residence at #220 Sion Hill.

[20] A finding of probable cause to support the issuance of a warrant cannot be based upon the officer's bare conclusions of others. *Gates,* 462 U.S. at 239. As such, when relying on statements made by an unnamed source, the affiant must do more than attest to

having received "reliable information from a credible person." *Id.* The corroboration of a source's statements by independent investigation provides substantial support for the finding of probable cause. As the *Gates* court indicates: "Our decisions applying the totality-of-the-circumstances analysis ... have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id.* at 241. The *Gates* court, citing a number of cases, concluded that "it is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' " *Id.* at 244-45 (quoting *Jones,* 362 U.S. at 269, 271). *United States v. Baukman*, No. CRIM. A. 05-440, 2007 WL 4355399, at \*2 (E.D. Pa. Dec. 12, 2007). At the time the Magistrate Judge reviewed the Affidavit, W1 was unknown, and hence the independent investigation of the officer would be critical to provide substantial support for the finding of probable cause. The Affidavit lacks the requisite independent investigation on the description of the searched property identified in the warrant as #220 Sion Hill and the identification of Osorio.

[21]    Detective Jules testified that W1's provided the information that led them to Osorio and his residence at #220 Sion Hill. The statements attributed to Witness #1 are that Wallace, Brewely, and Smith "traveled to a yellow house located on the back road for (*sic*) Sion farm... that the yard has a shed that appears to be a booth or a food van, and a short Hispanic male individual lives there." (Affidavit, paragraph M) W1 did not state that me saw the short Hispanic male, and so no further information was provided on the Hispanic male. Witness #1 only knows that Jiovani met with the short Hispanic male and they went inside." Then "Jiovani exited with the firearms ...." By itself, this

information is insufficient to establish the location of the house or who the Hispanic male is. There are no statements that indicate that Detective Jules and/or other officers did further investigation to ascertain the location of the generic house described or the Hispanic male that was there. Yet, in the following paragraph, paragraph N, Jules concluded in her Affidavit that the short, Hispanic male was Osorio and the generic house described was #220 Sion Hill where Osorio resides. Detective Jules statement in paragraph M can only be read as a conclusion, and under *Franks*, conclusions cannot support a finding of probable cause to issue a warrant.

### 4. Detective Jules omitted information about Wallace lying during his video statement with reckless disregard for the truth.

[22]    At the hearing, Detective Jules testified to leaving out a portion of Wallace's statement in which he claimed a gun was placed at his head and he was forced to drive. Detective Jules admitted that she knew that Wallace's statement was false. Any reasonable person would know that a witness' dishonesty when making a statement is pertinent information to the judge acting on the statement. As such, this omission was also made with reckless disregard for the truth.

### B. Detective Jules' omissions and false or misleading statements were material to the probable cause determination because judges evaluate the veracity and credibility of an informant or witness and the accuracy of their statement when issuing a warrant.

[23]    In the second step of evaluating a *Franks* challenge, courts remove all the false or misleading statements and insert all omissions into the challenged affidavit. *People v. George*, No. ST-2016-CR-0000085, 2016 WL 4681165, at *14 (V.I. Super. Sept. 6, 2016). The court then examines the remaining affidavit and determines if probable cause still exists. *Id.* If it does, then the omissions and false statements were not material to the

probable cause finding and vice versa. *Id.* Importantly, in issuing a warrant, "[a]n affidavit establishes probable cause for a search warrant if the *totality* of the information it contains establishes the fair probability that contraband or evidence of a crime will be found" in the place to be searched. *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018) (emphasis added). Because the initial probable cause determination is made based on the totality of the information, the re-evaluation of probable cause will also be based on the totality of the information in the "corrected" probable cause affidavit.

### 1. Detective Jules' misleading statements or omissions regarding Wallace's identity and credibility are material to the finding of probable cause because police never corroborated his statement.

[24]    First, Detective Jules omitted W1's identity and made it seem that W1 and Wallace were different people. Second, Detective Jules omitted that Wallace lied extensively during his statement. Where a warrant affidavit cites hearsay information obtained from an informant or witness, judges evaluate the "veracity" and "basis of knowledge" of persons supplying hearsay information to determine if probable cause exists. *See Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). Magistrates credit statements from witnesses or informants when granting a warrant based on how the witness or informants' credibility is established. *See United States v. Green*, No. 23-1022, 2024 U.S. App. LEXIS 1737, at *8-9 (3d Cir. Jan. 25, 2024). Moreover, if an informant or witness' personal credibility is unclear, their statements must be "corroborated in significant part by independent police investigation" to be credited by the magistrate. *Id.*

[25]    Had Detective Jules' affidavit identified W1 as Wallace and detailed his dishonesty during his statement, significant corroboration would need to be shown to

justify a warrant. For example, in *Sanchez*, the Court was able to uphold the warrant despite the omittance of the informant's "unsavory character" from the probable cause affidavit because the officers corroborated his statement by having him participate in a drug purchase. *United States v. Sanchez*, 246 F. App'x 803, 805 (3d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213 (1983)). Unlike *Sanchez*, Detective Jules has not demonstrated any police work completed to corroborate Wallace's statement. Rather, paragraph "M" states that Wallace told officers the guns were located at a yellow house owned by a short Hispanic male on a back road of Sion Farm with a shed/booth/or food van. Then, paragraph "L" inexplicably identifies the house as #220 Sion Farm. Without a reliable informant or witness, probable cause requires corroboration. Because neither a reliable informant or witness or corroboration is present in Detective Jules' Affidavit once intentional, knowing, or reckless misleading statements and omissions are corrected, such errors were material to the probable cause finding.

> ### 2. Detective Jules' false statement that Wallace's allegations were recorded is material to the finding of probable cause because it questions the accuracy and truthfulness of the Affidavit.

[26]     Detective Jules said Wallace's statement was recorded when the parts that identified the place to be searched were not. When evaluating a probable cause affidavit based on the statement of a witness or informant, the question is whether the officer accurately and truthfully represented what the witness told him or her." *People of the V.I. v. George*, No. ST-2016-CR-0000085, 2016 V.I. LEXIS 135, at *10 (Super. Ct. Sep. 6, 2016). The Virgin Islands Legislature has also signaled the importance of recording testimony taken in support of a warrant by mandating that such testimony be recorded and submitted with the affidavit when a warrant is requested in the presence of a judge.

*In re Adoption of the V.I. Rules of Criminal Procedure*, No. 2017-010, 2017 V.I. Supreme LEXIS 68 (Oct. 16, 2017).

[27]    In her Affidavit, Detective Jules told the Judge that Wallace's statements were video recorded. Such a statement assures the Judge that the transcription of the statements about the place to be searched is accurate and truthful because it is memorialized. Had Detective Jules revealed the truth about the statements, that they were made by Wallace but never recorded and then recalled from memory ten (10) days later, questions about the accuracy and truthfulness of the representation would have arisen. This is compounded by the fact that Wallace's statement is the sole basis Detective Jules identified for knowing the location of the house. As such, Detective Jules' false statement was material to the probable cause determination.

**C. The Application of the Exclusionary Rule is Appropriate to ensure fairness, protect the defendant's rights, and uphold the greater policy statement that search warrants be based on reliable statements supported by investigative facts.**

[28]    Illegally obtained evidence may be excluded from the case on application of the "exclusionary rule." *People v. Warrell*, 2022 VI SUPER 59U, ¶ 52 (V.I. Super. June 22, 2022); *see also United States v. Anderson*, No. 13-119, 2014 U.S. Dist. LEXIS 41773, at *14 (E.D. Pa. Mar. 27, 2014). The purpose of the exclusionary rule is to deter Fourth Amendment violations caused by subpar police work. *Id.* at ¶ 53. Hence, it is not an individual right, but its application serves as a deterrence measure. *Id.* at ¶ 55. Certainly, this would include deterring the failure to record witness or informant statements, and instead relying on weeks-old memory, and failing to corroborate statements from witnesses or informants of questionable credibility.

[29]     Further, as a public policy matter, "[the remedy of] suppression is appropriate to ensure that the constitutional rights of all Virgin Islanders and visitors are respected." *People of the V.I. v. Warrell*, No. ST-2019-CR-00134, 2022 V.I. LEXIS 55, at *51 (Super. Ct. June 22, 2022) By granting Osorio's *Franks* Motion, the Court ensures fairness and protects the Defendant's rights. The larger public policy statement is that the police cannot intentionally, knowingly, or recklessly use false or misleading statements or omissions to obtain a search warrant for a person's property and, if they do, it will be suppressed.

**CONCLUSION**

[30]     Because the initial probable cause determination is made based on the totality of the information, the re-evaluation of probable cause will also be based on the totality of the information. The information presented at the *Franks* hearing shows that Detective Jules omitted from her Affidavit that W1 was also involved in obtaining the guns, she misled the judge that Wallace and W1 were different people, she omitted the fact that Wallace lied during his statement, and she falsely claimed that the description of the house was derived from a recorded statement when, in actuality, she wrote it down from memory 10-days after he allegedly gave it to her. This is enough to incline a fair and impartial mind to believe that probable cause would not have been found based on the "corrected" affidavit, thus fulfilling Osorio's burden of proof. Given the totality of the circumstances, and the failure of probable cause even in the absence of false or omitted information, the exclusionary rule demands the suppression of all fruits of the unlawful search.

       Accordingly, it is hereby,

**ORDERED** that Defendant's Motion to Suppress **GRANTED**. It is further,

**ORDERED** that all evidence seized from #220 Estate Sion Hill on the execution

of March 26, 2020, the search warrant is suppressed and excluded from use in the

Defendant's trial on this matter.

**DONE AND SO ORDERED** this _22_ day of January 2025.

_____
**HON. YVETTE ROSS-EDWARDS**
**Judge of the Superior Court**

**A T T E S T:**

**TAMARA CHARLES**
Clerk of the Court

By: _____
            Court Clerk
Date: _01 / 22 / 2025_

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
January 22, 2025 05:00 PM
SX-2020-CR-00139
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

**People of the Virgin Islands v.**
**Jose Juan Osorio, Jr.**

Case Number: **SX-2020-CR-00139**
Charges: **14 V.I.C. 2253(a) - Possession Of An Unlicense Firearm**
**14 V.I.C. 2253(a) - Possession Of An Unlicense Firearm**
**14 V.I.C. 2253(a) - Possession Of An Unlicense Firearm**
**14 V.I.C. 2253(b) - Possession Of An Unlicense Machine/Sawed Off Gun**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**
**14 V.I.C. 2256(a) - Possession Or Sale Of Ammunition**

## NOTICE of ENTRY
### of
### Memorandum Opinion and Order

**To:** Kippy Gordon Roberson, Esq.          Martial A. Webster, Sr., Esq.

**Please take notice that on January 22, 2025**
**a(n)** _____ **Memorandum Opinion and Order** _____
**dated   January 22, 2025   was/were entered**
**by the Clerk in the above-titled matter.**

**Dated:   January 22, 2025**

**Tamara Charles**
**Clerk of the Court**

By:

**Iris Cintron**
**Court Clerk Supervisor**